## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD SEGINES, | ) | CASE NO. 1:11-cv-02400 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| TERRY TIBBALS, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Richard Segines ("Segines"), challenges the constitutionality of his conviction

in the case of *State v. Segines*, Cuyahoga County Court of Common Pleas Case No. cr-2006-

487410-C.  Segines, *pro se*, filed his Petition for a Writ of Habeas Corpus (ECF No. 1) pursuant

to 28 U.S.C. § 2254 on November 7, 2011.  On April 30, 2012, Warden Terry Tibbals

("Respondent") filed his Answer/Return of Writ.  (ECF No. 8.)  Segines filed a Traverse on June

7, 2012, and a second one on July 16, 2012.  (ECF Nos. 13 & 14.)  For reasons set forth in detail

below, it is recommended that Segines's petition be DENIED.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. §

2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate court

summarized the facts underlying Segines's conviction as follows:

[*P4]  The state's evidence established that on September 13, 2006, [Harry] Briscoe told his girlfriend [Sharon] Dockery to get dressed because they had to go somewhere.  They drove Dockery's Ford Escort and picked up defendant. Briscoe then instructed Dockery to drive to the Banbury Apartments.  While en route, defendant spoke to someone on his cell phone about purchasing tennis shoes. Once the three arrived at the apartment complex, Briscoe ordered her to park the vehicle in the lot and wait there for the two men to return.  Dockery followed Briscoe's directions.

[*P5]  Damon Leggett, a maintenance worker at the apartment complex, testified that two men, one of whom he identified as Briscoe, approached Ali Th Abu Atiq who was selling clothing apparel from his van.  One man was in a striped shirt and the other was in black.  Approximately five minutes later, Leggett received a call that the man near the van had been shot.  He ran to the area and observed Ali Th Abu Atiq who was struggling to breathe and died a short time later from the wound which perforated his lung and caused him to bleed to death.  He also sustained traumatic injuries to his head, left arm, and leg.

[*P6]  Defendant and Briscoe confiscated clothing, a set of keys, the victim's cell phone, and over $200 in cash, and then fled to Dockery's vehicle, pounded on the window, and demanded that she unlock the doors.  Dockery noticed defendant was holding a gun, some white t-shirts, and blue jeans.  Briscoe was carrying a cell phone that he did not own.  According to Dockery, Briscoe told her that defendant fought with the man and Briscoe then jumped in and hit him in the head and the gun discharged.

[*P7]  Banbury resident Gaylon Clark observed a man being shot and observed two assailants.  He then noticed a woman in a gray Ford Escort pulling out.  He attempted to warn her to stay out of the area then noticed the two assailants get into her vehicle.

[*P8]  Briscoe ordered Dockery to drive away quickly.  She complied with his demand and the three drove to various places.  During the drive, Dockery testified that defendant told Briscoe that he thought Briscoe had killed Ali Th Abu Atiq. Briscoe denied doing so but stated that he had obtained about $10 and a cell phone.  Defendant stated he had $200 and a set of keys, then counted the money and divided it between himself and Briscoe.  The men threw the keys and cell phone out the window and, Dockery believed, defendant changed out of the shirt he was wearing and put on a shirt obtained from the victim's van.

[*P9]  Dockery noticed a police car behind her so she parked the vehicle in a driveway of a home in Cleveland and she and Briscoe pretended to ask for

-2-

directions.

[*P10]  Garfield Heights Police Officer Thomas Murphy testified that, following the shooting, he was on the lookout for a gray Ford Escort and later that afternoon observed such a vehicle in Garfield Heights and noticed the occupants, one woman and two men, handling clothing.  He ran the plates and learned that it belonged to Dockery.  Officer Murphy followed the vehicle but could not stop it. A shirt was recovered near the home where the vehicle was briefly parked.  This shirt had a DNA profile consistent with defendant's DNA profile.  Murphy later found Dockery's vehicle abandoned on Telfair Road in Cleveland.  Fingerprints recovered from the Escort were linked to defendant and Briscoe.

[*P11]  Spencer Sherels testified that two men, whom he later identified as defendant and Briscoe, and a woman identified as Dockery, came to his house on the day of the shooting and asked how to get to Northfield.  Sherels saw the handle of a gun inside the car and asked them to leave.

[*P12]  Dockery and defendant then left on foot while Briscoe drove off in the vehicle. Defendant contacted a friend to take them to defendant's apartment. Dockery stayed at the apartment for a short time then stayed with Briscoe at the home of his cousin Toby.  The next evening, Briscoe contacted Melvin Barnes.

[*P13]  Barnes testified that, on September 16, 2006, Briscoe called him for a ride.  Barnes went to Kinsman Road in Cleveland to meet Briscoe who was with Dockery, Amar Simmons, and Simmon's girlfriend, Takeva.  Barnes drove Briscoe to a Motel 6 in Macedonia and rented a room for him.  Dockery followed in a vehicle behind.

[*P14]  Dockery and Briscoe stayed only one night at the Motel 6.  The next day, Tanika Dixon, a friend of Dockery, picked Dockery and Briscoe up and drove them to Alliance, Ohio.  Dockery and Briscoe slept at the house of one of Tanika's friends for one night and Tanika's sister, Tasha's house, the following evening.  While Dockery and Briscoe were at Tasha's, the police arrived and arrested them.

[*P15]  During its investigation, Warrensville Heights Police learned that the keys were missing from Ali Th Abu Atiq's van and there was no money in his possession.  A shell casing was recovered from beneath the van and a bullet was found within the van and there were latent fingerprints on the outside of the van. One of the prints was matched to Briscoe.

[*P16]  The police subsequently obtained information that Dockery was hiding at a home in Alliance.  She and Briscoe were later arrested.  Defendant was arrested at his girlfriend's house.  Officers later determined that the weapon associated

-3-

with the shooting was located on Telfair Road in Cleveland.  They determined that the casing recovered beneath the van came from this weapon.  Emma Anderson testified for the defense and stated that, on the morning of September 13, 2006, she heard Briscoe, her neighbor, arguing with a woman she later learned was Dockery.

*State v. Segines*, 2008 Ohio App. LEXIS 1746, 2008-Ohio-2041 at ¶¶4-17 (Ohio Ct. App., May 1, 2008).

## II.  Procedural History

### A.  Conviction

In September of 2006, a Cuyahoga County Grand Jury charged Segines with one count of aggravated murder in violation of Ohio Revised Code ("O.R.C.") § 2903.01(A) with firearm, felony murder, and repeat violent offender specifications, one count of aggravated murder in violation of O.R.C. § 2903.01(B) with firearm, felony murder, and repeat violent offender specifications, one count of aggravated robbery in violation of O.R.C. § 2911.01(A)(1) with firearm, felony murder, and repeat violent offender specifications, and one count of aggravated robbery in violation of O.R.C. § 2911.01(A)(3) with firearm, felony murder, and repeat violent offender specifications.[1]  (ECF No. 8, Exh. 1.)

Trial commenced on May 7, 2007.  (Tr. 8.)  On May 9, 2007, three days into trial, defense counsel filed a Motion for a Separate Trial.  (ECF No. 8, Exh. 3), which was denied as untimely.  (ECF No. 8, Exh. 4.)  On May 15, 2007, a jury found Segines not guilty of aggravated murder as contained in Count Two of the indictment, but guilty of the lesser included offense of murder

---

[1]  The indictment also charged Dockery and Briscoe with the same offenses.  (ECF No. 8, Exh. 1.)  On the day trial was to commence, the felony murder specifications against Segines and Briscoe were dismissed.  (ECF No. 9, Tr. 9-15.)  Also, one count of aggravated murder as contained Count One was dismissed pursuant to Ohio Crim. R. 29.  (ECF No. 8, Exh. 5.)

-4-

with one and three-year firearm specifications.  (ECF No. 8, Exh. 5.)  Segines was also found

guilty of two counts of aggravated robbery as contained in Counts Three and Four of the

indictment with one and three-year firearm specifications.  *Id*.  On May 18, 2007, the trial court

sentenced Segines to fifteen (15) years to life in prison on Count Two along with a three (3) year

firearm specification to be served consecutively, and ten (10) years each on Counts Three and

Four to run concurrent with one another but consecutive to Count Two, for an aggregate of

twenty-eight (28) years to life in prison.  (ECF No. 8, Exh. 6.)

**B.    Direct Appeal**

On May 24, 2007, Segines, through counsel, filed a Notice of Appeal with the Court of

Appeals for the Eighth Appellate District ("state appellate court") raising the following

assignments of error:

> I.    There was insufficient evidence to convict appellant.
>
> II.   The conviction of appellant is against the manifest weight of the evidence.
>
> III.  The trial court erred in denying defense counsel's motion to suppress the identification testimony and photo arrays.
>
> IV.   The trial court abused its discretion when it denied Defendant's motion to separate trials and/or relief from joinder.
>
> V.    The trial court abused its discretion in denying Defendants' motions for mistrial.
>
> VI.   The trial court abused its discretion in failing to provide lesser included offense charge and in deleting portions of agreed upon jury instructions.
>
> VII.  Defendant was denied the effective assistance of counsel.

(ECF No. 8, Ex. 7.)

On May 12, 2008, Segines's conviction was affirmed.  (ECF No. 8, Exh. 9.)  Segines

-5-

filed a motion for reconsideration (ECF No. 8, Exh. 10), which was denied as untimely.  (ECF No. 8, Exh. 12.)

On May 12, 2008, Segines, *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio raising the following propositions of law:

> I.    Defendant was denied due process of law under Art. I, 10 of the Ohio Constitution and his Fourteenth Amendment rights under the United States Constitution where there were insufficient evidence to sustain a conviction against him.
>
> II.   Defendant was denied due process of law under Art. I, §10 of the Ohio Constitution and his Fourteenth Amendment rights under the United States Constitution when the court denied counsel's motion to suppress the identification testimony and photo arrays.
>
> III.  Defendant was denied due process of law under Art. I, §10 of the Ohio Constitution and his Fourteenth Amendment rights under the United States Constitution when the trial court denied his motion for separate trials absent good cause shown.
>
> IV.   Defendant was denied due process of law under Art. I, §10 of the Ohio Constitution and his Fourtee[n]th Amendment rights under the United States Constitution when the trial court denied him a motion for mistrial.
>
> V.    Defendant was denied due process of law under Art. I, §10 of the Ohio Constitution and his Fourteenth Amendment rights under the United States Constitution when the trial court failed to provide lesser included offense charge and in deleting portions of agreed upon jury instructions.
>
> VI.   Defendant was denied his Sixth Amendment right to effective assistance of counsel and due process of law under Art. I, §10 of the Ohio Constitution and his [F]ourteenth Amendment right under the United States Constitution when counsel failed to timely file motion for separate trials and defense counsel failure to file a motion to permit defendant to wear regular clothing during the pendency of the trial.

(ECF No. 8, Exh. 13.)

On October 1, 2008, the appeal was dismissed as not involving any substantial constitutional question.  (ECF No. 8, Exh. 16.)

-6-

**C.    Application to Reopen Appeal**

On August 4, 2008, Segines filed an application to reopen his appeal pursuant to Ohio App.

R. 26(B) raising one assignment of error:

> Defendant was denied his Sixth and Fourteenth Amendment Right to effective
> assistance of counsel and Due Process of Law under Art, 1, 10 of the Ohio
> Constitution, and the United States Constitution when counsel filed a Motion for
> Reconsideration, and did not file a Supplemental Brief as required.

(ECF No. 17.)

The state appellate court granted Segines's application to reopen his appeal.  (ECF No. 8,

Exh. 19.)  Thereafter, through appointed counsel, Segines raised one assignment of error: "Trial

counsel's failure to object to indictment error pursuant to State v. Colon, 118 Ohio St.3d 26,

2008 Ohio 1624, deprived the appellant his right to effective assistance of counsel."  (ECF No. 8,

Exh. 20.)

On October 21, 2010, Segines's convictions were affirmed.  (ECF No. 8, Exh. 22.)  No

appeal was taken to the Ohio Supreme Court.

On January 24, 2011, Segines, *pro se*, filed a second application to reopen his appeal

pursuant to Ohio App. R. 26(B), which was denied on March 25, 2011.  (ECF No. 8, Exh. 24.)

No appeal was taken from this decision.

**D.    Federal Habeas Petition**

On November 7, 2011, Segines filed a Petition for Writ of Habeas Corpus asserting the

following grounds for relief:

> **GROUND ONE**: Petitioner's Ohio Constitutional right under Article I
> section 10, and U.S. Constitution of the Sixth Amendment was violated with
> respect to being properly informed of the nature and cause of the accusations.

> **GROUND TWO**: Petitioner's Constitutional Right to due process under the 14th

-7-

Amendment of the U.S. Constitution was violated as his conviction is based upon insufficient evidence.

**GROUND THREE**: The conviction of Petitioner was against the Manifest Weight of the evidence. Viloating [sic] Petitioner's Constitutional right to a fair trial and due process.

**GROUND FOUR**: Petitioner's Constitutional right to due process and fair trial in accords with the U.S. Constitution and the Ohio Constitution was violated when the trial court tried Petitioner and Co-Defendant together.  Further causing trial counsel to be ineffective.

(ECF No. 1.)

### III.  Exhaustion and Procedural Default

**A.   Exhaustion Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

**B.   Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v.*

-8-

*Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).

A claim may become procedurally defaulted in two ways. *Id.*  First, a petitioner may

procedurally default a claim by failing to comply with state procedural rules in presenting his

claim to the appropriate state court.  *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.

1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to

reach the merits of the issue, and the state procedural rule is an independent and adequate

grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue

that claim through the state's "ordinary appellate review procedures."  *O'Sullivan v. Boerckel*,

526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer

allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107,

125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  This second

type of procedural default is often confused with exhaustion. Exhaustion and procedural default,

however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still

available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court

remedies are no longer available to a petitioner because he failed to use them within the required

time period, procedural default and not exhaustion bars federal court review.  *Id.*  In Ohio, a

petitioner is not entitled to raise claims in post-conviction proceedings where those claims could

---

[2]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a
claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides
(1) whether the petitioner failed to comply with an applicable state procedural rule,
(2) whether the state courts actually enforced the state procedural sanction, (3) whether
the state procedural bar is an "independent and adequate" state ground on which the state
can foreclose federal review, and (4) whether the petitioner has demonstrated "cause"
and "prejudice."  *Id.* at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

-9-

have been raised on direct appeal.  *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law."  *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138-39.  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error."  *Id*.  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See*

-10-

*United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*; See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D.Ohio 2007).

**C.  Analysis**

Respondent argues that grounds one and three are procedurally defaulted because they were never fairly presented to the Ohio Supreme Court.  (ECF No. 8 at 11-12.)  In ground three, Segines avers that his conviction was against the manifest weight of the evidence.  (ECF No. 1.)  As discussed in the Merits section below, such claims are not cognizable upon federal habeas review; and, therefore, the Court declines to address whether said claim is also procedurally defaulted.

The claim in ground one – that the indictment failed to properly inform him of the nature and cause of the accusations – was not raised on direct appeal, but was addressed when the direct appeal was reopened.  (ECF No. 8, Exhs. 17, 20 & 21.)  Nonetheless, Segines did not appeal

-11-

from the state appellate court's decision to the Ohio Supreme Court.  "A 'complete round' [of review] requires a petitioner to also present the issues to the state supreme court."  *Houston v. Waller*, 420 Fed. Appx. 501, 510 (6th Cir. 2011) (citing O'Sullivan, 526 U.S. at 845-47).  Furthermore, Segines has not argued cause and ensuing prejudice or raised a credible claim of actual innocence based on new reliable evidence.  Ground one is procedurally defaulted.

Finally, Respondent asserts that ground four, wherein Segines argues ineffective assistance of counsel stemming from an untimely request for separate trials, is also procedurally defaulted, in part.  The substance of these claims appears to have been raised before both the appellate court and Ohio Supreme Court.  This Court declines to address the procedural default issue as it relates to ground four, and will instead proceed to address the merits of Segines's claim.  The United States Supreme Court has observed that federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits.  *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the court's determination of the case.  *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Jackson v. Anderson*, 141 F.Supp.2d 811, 826-27 (N.D. Ohio 2001).

### IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Parker v. Matthews,* 567 U.S. –, 2012 WL 2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S. –, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6ᵗʰ Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6ᵗʰ Cir. 2002))  The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court."  *Parker*, 2012 WL 2076341, *6; *Howes v. Walker,* – S.Ct. –, 2012 WL 508160 (U.S. Jun. 11, 2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court

-13-

concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, ––– U.S. –––, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id.* at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785. The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation marks omitted). Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87. This is a very high standard, which the Court readily acknowledges. *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.").

**A. Ground One: Indictment**

In ground one of the petition, Segines argues that the indictment failed to properly inform

-14-

him of the nature and cause of the accusations against him, thereby violating his rights under Article I, section 10 and the Sixth Amendment to the United States Constitution.  Although ground one is procedurally defaulted, as explained above, the claim also fails on the merits.

It is well settled that the federal guarantee of a grand jury indictment does not apply to the states.  *See, e.g., Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984) (*citing Branzburg v. Hayes*, 408 U.S. 665 (1972)); *accord Riffel v. Erwin*, 2005 U.S. Dist. LEXIS 11666 (S.D. Ohio 2005).  In addition, "the Constitution does not require any particular state indictment rule ... [or]  an indictment at all if sufficient notice of the charges is given in some other manner."  *Id*. (*citing Combs v. Tennessee*, 530 F.2d 695 (6th Cir.) *cert. denied*, 425 U.S. 954 (1976)).  Nevertheless, the Due Process Clause of the Fourteenth Amendment requires that a state must give a criminal defendant "fair notice" of the charges against him to permit adequate preparation of his defense. *See Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006); *Koontz*, 731 F.2d at 369; *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977).  The fair notice requirement is met when a charged offense "[is] described with some precision and certainty so as to apprise the accused of the crime with which he stands charged."  *Id*.  "To pass constitutional muster, an indictment must meet a two-prong test: first, the indictment must set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces; second, the indictment must be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts."  *United States v. Martinez*, 981 F.2d  867, 872 (6th Cir. 1992).  The United States Supreme Court has held as follows:

> It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished."  *United States v.*

> *Carll*, 105 U.S. 611, 612 (1882). "Undoubtedly the language of the statute may be
> used in the general description of an offence, but it must be accompanied with
> such a statement of the facts and circumstances as will inform the accused of the
> specific offence, coming under the general description, with which he is charged."
> *United States v. Hess*, 124 U.S. 483, 487 (1888).

*Hamling v. United States*, 418 U.S. 87, 117-118 (1974); *accord United States v. McAuliffe*, 490

F.3d 526, 530 (6th Cir. 2007); *United States v. Jackson*, 327 F.3d 273, 290 (4th Cir. 2003).

Specifically, Segines claims a constitutional violation occurred under *State v. Colon*, 885

N.E.2d 917, 118 Ohio St. 3d 26 (Ohio 2008), which held that it is a constitutional violation

where the indictment fails to set forth the *mens rea* of the offenses charged.  (ECF No. 1.)

Although the State of Ohio may require indictment by a grand jury pursuant to its own

constitution, any violation of such right is a matter of state law.  The U.S. Supreme Court has

stated many times that "federal habeas corpus relief does not lie for errors of state law."  *Lewis v.

Jeffers*, 497 U.S. 764, 780 (1990); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984).  To be

entitled to relief in federal habeas corpus, a petitioner must establish that there has been an

infringement of a right guaranteed under the United States Constitution.  *Clemmons v. Sowders*,

34 F.3d 352, 357 (6th Cir. 1994).  Therefore, even if Ohio requires indictment by a grand jury

similar to the federal constitutional right in *federal* criminal prosecutions, the violation of the

state right to a grand jury indictment in Ohio, and all the procedural safeguards appurtenant

thereto, does not transform the *state* right into a *federal* constitutional right.   Therefore, this

Court will only consider whether Segines's rights were violated under the Sixth Amendment of

the United States Constitution.

First, both of the aggravated murder charges contained the *mens rea* that the defendants

acted "purposely."[3]  (ECF No. 8, Exh. 1.)  Segines is correct, however, that the indictment does

not set forth any *mens rea* for the aggravated robbery charges.  *Id*.  Nonetheless, that omission

alone is not a federal constitutional violation so long as he received fair notice.  This simply

requires that the accused be apprised with some precision and certainty of the crime with which

he stands charged.  In *Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006), it was found that

fair notice was provided to a defendant even though the indictment did not expressly set out the

*mens rea*.  The *Williams* court explained as follows:

> The indictment here undoubtedly provided Williams with fair notice of the
> charges against him.  The indictment's reliance on references to the principal
> statutes to identify the mens rea elements does not render the indictment
> insufficient because Williams still had adequate notice of the offenses to prepare
> his defense.  Although the exact mens rea requirements were not stated in the
> indictment, the indictment  precisely stated the offenses with which Williams was
> charged so that there could be no confusion on this point.  Moreover, the
> indictment referenced the principal statutes for the mens rea requirement, and thus
> Williams could have located the statutes and determined the mental states
> required for the offenses with which he was charged.  The sufficiency of the
> indictment is bolstered by our prior determination that even in a federal
> prosecution, which is held to the more stringent requirements imposed by the
> Fifth Amendment Grand Jury Clause, an indictment is sufficient when it refers to
> the appropriate statute for the mens rea element rather than explicitly specifying
> the required mental state.  *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir.
> 1992).  For these reasons, the indictment in this state prosecution satisfied the
> mandates of due process.

*Williams*, 467 F.3d at 535-36 (footnotes omitted); *accord Peeks v. Sheets*, 2010 U.S. Dist.

LEXIS 21202 (S.D. Ohio Mar. 9, 2010)

Segines was clearly apprised of the fact that he was being charged with aggravated robbery

---

[3]  Pursuant to O.R.C. § 2901.22(A), "[a] person acts purposely when it is his specific
intention to cause a certain result, or, when the gist of the offense is a prohibition against
conduct of a certain nature, regardless of what the offender intends to accomplish
thereby, it is his specific intention to engage in conduct of that nature."

in violation of O.R.C. § 2911.01(A)(1) & (A)(3).  (ECF No. 8, Exh. 1.)  The indictment

specifically identified the elements of the crime: (1) a theft or attempted theft as defined in

O.R.C. § 2913.01 and, (2) brandishing, displaying, using, or indicating possession of a deadly

weapon.[4]  The statutes themselves identify the *mens rea* where it is applicable, and Segines, or

his counsel, could easily have determined the mental states required for the charged offense.  As

found by the state appellate court, the aggravated robbery charge tracked the language of O.R.C.

§ 2911.01(A)(3), and, therefore, "there is no violation in failing to state the culpable mental

state."  (ECF No. 8-1, Exh. 22 at 4.)  There is nothing unreasonable about the state court's

determination, and this Court agrees with the reasoning of the Southern District Court of Ohio in

an analogous case:

> Here the indictment specifically identified the type of crime petitioner allegedly
> committed ..., the date of the crime, and the names of the alleged victims. That
> information was sufficient to allow him to prepare a defense, and he does not
> argue otherwise.  The fact that the indictment did not specify a *mens rea*
> requirement - just as the underlying Ohio statutes do not - does not mean that
> petitioner was unaware that the state had to prove *mens rea*, or unaware what
> *mens rea* applied to these crimes.

*Arthurs v. Warden, Warren Corr. Inst.*, 2012 U.S. Dist. LEXIS 39779 at **17-18 (S.D. Ohio

---

[4] Although this Court declines to address whether Segines raises meritorious state law claims, his reliance on *Colon* is misplaced in light of the Ohio Supreme Court's ruling in *State v. Lester*, 916 N.E.2d 1038, 123 Ohio St.3d 396 (Ohio 2009).  Therein, the Ohio Supreme Court held that because "the crime of aggravated robbery under R.C. 2911.01(A)(1)" is strict liability, the State need not charge the mens rea of the offense in the indictment.  *Id.* at 1044.  Even if this Court could consider the issue, it cannot overrule the interpretation of a state law.  *See, e.g., Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) ("Federal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state."); *see also Riley v. Woods*, 2010 U.S. Dist. LEXIS 81453 at **11-12 (E.D. Mich., Aug. 11, 2010) ("A federal habeas court must therefore defer to a state appellate court's construction of the elements of state crimes.") (*citing Sanford v. Yukins*, 288 F. 3d 855, 862 (6th Cir. 2002); *Coe v. Bell*, 161 F.3d 320, 347 (6th Cir. 1998)).

Mar. 23, 2012).

This Court can grant habeas relief only where a state court's decision is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Given the lack of any clearly established law, as found by the United States Supreme Court, requiring charging documents in state criminal proceedings to explicitly set forth the requisite *mens rea* of the offense charged, Segines's first ground for relief is without merit.

**B.  Grounds Two and Three: Sufficiency and Manifest Weight of the Evidence**

In ground two, Segines asserts that his conviction was not supported by sufficient evidence. (ECF No. 1.)  In ground three, Segines claims that his conviction was against the manifest weight of the evidence.  *Id.*  Manifest weight claims are not cognizable on federal habeas review.[5]  *See, e.g., Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Hess v. Eberlin*, 2006 WL 2090093 at *6 (S.D. Ohio 2006).  Therefore, ground three cannot be considered.

The Due Process clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The standard for

---

[5]  As explained by the U.S. District for the Southern District of Ohio, "under Ohio law, a claim that a verdict was against the manifest weight of the evidence-as opposed to one based upon insufficient evidence-requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Hess*, 2006 WL 2090093 at *7 (*quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (Ohio Ct. App. 1983).  Because a federal district court does "not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review," this Court cannot consider whether Segines's conviction was against the manifest weight of the evidence.  *Id.*

determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317 (1979).  In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses.  *See id.*; *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).  Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record . . . should be resolved in favor of the prosecution." *Heinish v. Tate*, 9 F.3d 1548, 1993 WL 460782 (6th Cir. 1993) (unpublished opinion), *citing Walker*, 703 F.3d at 969-70; *Wright v. West*, 505 U.S. 277, 296 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

The state appellate court, after reviewing the evidence presented to the jury, addressed this claim as follows:

> [*P20]  When reviewing a challenge to the sufficiency of the evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime, proven beyond a reasonable doubt.  *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.  Thus, a reviewing court will not overturn a conviction for insufficiency of "the evidence unless we find that reasonable minds could not reach the conclusion reached by the trier of fact."  *State v. Treesh*, 90 Ohio St.3d 460, 484, 2001 Ohio 4, 739 N.E.2d 749.

> [*P21]  The essential elements of aggravated robbery are defined in R.C. 2911.01 which states:

> [*P22]  "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

[*P23]  "(1) Have a deadly weapon * * *

[*P24]  "(3) Inflict, or attempt to inflict, serious physical harm on another."

[*P25]  The essential elements of murder are to purposely cause the death of another. R.C. 2903.02(A).

[*P26]  R.C. 2923.03(A)(2) defines "complicity" as:

[*P27]  "No person, acting with the kind of culpability required for the commission of an offense, shall * ** [a]id or abet another in committing the offense."

[*P28]  To "aid and abet" is "'[t]o assist or facilitate the commission of a crime, or to promote its accomplishment.'" *State v. Johnson* (2001), 93 Ohio St.3d 240, 243, 2001 Ohio 1336, 754 N.E.2d 796, quoting Black's Law Dictionary (7th Ed.1999) 69.  A conviction for complicity by aiding and abetting is shown by evidence demonstrating that a defendant "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal."  *Id*. at the syllabus.

[*P29]  In this matter, the state's evidence demonstrated that Briscoe told Dockery that they had to go somewhere, then instructed her to pick up defendant. Dockery was then instructed to drive to the Banbury Apartments.  En route, defendant made a phone call to someone and ordered seven pairs of tennis shoes. The men exited the vehicle and met up with the victim who was known to sell clothing from his van.  A few minutes later, the victim sustained traumatic injuries to his head, arm and leg, and a mortal gunshot wound.  The men fled to Dockery's vehicle with clothing, keys, and the victim's phone and left the scene. At this time, defendant had Briscoe's weapon.  Briscoe told Dockery that defendant fought with the victim.  They eluded police by feigning that they belonged at Sherel's home, but were later captured. A shirt was found in this area with DNA, which is consistent with defendant's DNA profile, and defendant's fingerprints were found in Dockery's car.  From all of the foregoing, we conclude that a rational trier of fact could have found the essential elements of the offenses proven beyond a reasonable doubt.

[*P30]  As to aggravated robbery, the evidence demonstrated that defendant arranged to meet the victim, that he fought with the victim and that the victim suffered traumatic injuries and a mortal gunshot wound before the men fled with his money and property.  As to murder, the evidence demonstrated that defendant incited and planned the offense by arranging to meet with the victim, and that, immediately after the shooting, defendant and Briscoe fled to Dockery's car and

-21-

defendant had Briscoe's weapon.  Briscoe repeatedly told defendant that he had killed the victim. The convictions are supported by sufficient evidence.

[*P31]  This assignment of error is without merit.

*Segines*, 2008-Ohio-2041 at ¶¶20-31.

The state appellate court identified the correct standard for sufficiency of the evidence claims.  While the decision was not an unreasonable determination of the facts in light of the evidence presented, this Court has conducted its own independent review.  The state appellate court's recitation of the testimony, for the most part, is accurate.

Dockery, who plead guilty to involuntary manslaughter and robbery in connection with the death of the victim herein, testified to the following at the trial.  (Tr. 508.)  She was Briscoe's girlfriend and Segines was his friend.  (Tr. 512.)  On the morning of September 13, 2006, she and Briscoe went to pick up Segines in her 1998 Ford Escort, which Briscoe drove.  (Tr. 512-14.)  After they picked up Segines, she took over driving at Briscoe's instruction.  (Tr. 515-6.)  Briscoe told her to drive to the Banbury apartments, during which time Segines called someone on his cell phone and ordered seven pairs of gym shoes.  (Tr. 519-21.)  Briscoe instructed her to park the car when they arrived at the apartments.  (Tr. 523.)  Segines and Briscoe departed the vehicle and she was told to wait as they would be right back  *Id*.  They returned fifteen to twenty minutes later after she heard a gunshot.  (Tr. 524, 526.)  She did not see who fired the gunshot.  (Tr. 526.)  When they returned, they were banging on the car doors, cussing, and telling her to hurry up.  (Tr. 529.)  At that time, she saw a weapon on Segines, and he was also carrying white T-shirts and blue jeans.  (Tr. 525, 530, 533.)  Briscoe was carrying a cell phone.  (Tr. 534.)  She heard Segines repeatedly say that Briscoe killed someone, though Briscoe kept denying it.  (Tr. 537-38.)  She also heard Segines ask Briscoe if he got anything, to which the latter responded

-22-

$10.  (Tr. 539.)  She heard Segines say that he obtained $200, and then saw Segines counting the bills and splitting the money with Briscoe.  (Tr. 539-40.)  Segines changed shirts while he was in the car.  (Tr. 542.)  After seeing a police car, Briscoe instructed her to pull into a driveway.  (Tr. 547-48.)  The two of them exited the vehicle and Briscoe asked someone for directions.  (Tr. 548-49.)  Later, Briscoe told her that Segines was fighting with the victim, causing him to get involved.  (Tr. 598.)  The gun went off when Briscoe hit the victim in the head.  *Id.*

Spencer Sherels testified that on September 13, 2006, a silver Ford Escort pulled into his driveway with "a girl and two guys."  (Tr. 1265.)  He saw a gun wrapped in a striped shirt in the back seat of the Ford Escort.  (Tr. 1268.)  Sherels told them that they had to leave.  (Tr. 1267.)  He spoke to the police ten minutes after they left.  (Tr. 1269.)  He identified the two men as Briscoe and Segines respectively.  (Tr. 1273-74.)

Segines seems to believe that, because the testimony tends to point to his co-defendant Briscoe as the actual shooter, his conviction is unsupportable.  He is mistaken.  Under Ohio law, an individual "who aids and abets another in committing an offense is guilty of the crime of complicity, and may be prosecuted and punished as if he were the principal offender."  *State v. Graven*, 369 N.E.2d 1205, 52 Ohio St. 2d 112, 115 (Ohio 1977).  In addition, although some evidence against Segines is circumstantial, "[i]n assessing the proof, a court may sustain a conviction based upon nothing more than circumstantial evidence."  *Stewart v. Wolfenbarger*, 595 F.3d 647, 656 (6th Cir. 2010) (*citing See United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)).  In addition, "circumstantial evidence and direct evidence are accorded the same weight . . . ."  *United States v. Harris*, 2011 U.S. App. LEXIS 22278 (6th Cir., Nov. 1, 2011) (*quoting United States v. Sherlin*, 67 F.3d 1208, 1214 (6th Cir. 1995) (citation omitted)).  As such, there is,

at a minimum, sufficient evidence to convict Segines of murder and robbery under an aiding and abetting theory.

### C.    Ground Four: Severance and Ineffective Assistance of Counsel

In ground four, as this Court understands Segines's argument, he asserts that he was deprived of the effective assistance of counsel when the trial court denied his motion to be tried separate from Briscoe, his co-defendant.  (ECF No. 1.)  Segines avers that defense counsel, by his own admission, was not prepared to proceed with a joint trial, resulting in ineffective assistance.[6]  *Id.*  Furthermore, trial counsel's failure to seek severance in a timely manner resulted in an unfair trial.[7]  *Id.*  Segines also appears to be arguing that the trial court violated his right to a fair trial by denying the motion for a separate trial.  (ECF No. 14 at 19-26.)

First, to establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985).  A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair.  *Id.*  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  In

---

[6]  In his Motion for a Separate trial, defense counsel argued that the last minute joinder was unexpected and that a "totally different trial preparation and strategy is necessary in order for all rights [of] Defendant Segines to be fully protected."

[7]  Before the state appellate court, Segines also argued that counsel was ineffective for allowing him to be tried wearing prison attire.  However, this argument does not appear anywhere in his petition or traverse and will not be considered.

other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy. *Id*. at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

> As explained recently by the United States Supreme Court:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S. Ct. 2052, 80 L. Ed. 2d 674; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ___, 129 S. Ct. 1411, 173 L. Ed. 2d 251. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ___, 129 S. Ct. 1411, 173 L. Ed. 2d 251. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland* 's deferential standard.

*Harrington v. Richter,* 131 S. Ct. 770, 788 (U.S. 2011); *accord Kennedy v. Warren*, 2011 WL 1642194, *2 (6th Cir. May 3, 2011).

> The state appellate court addressed this argument as follows:

> [*P51] "The trial court abused it discretion when it denied defendant's motion to separate trials and/or relief from joinder."

[*P52]  Crim.R. 8(B) governs joinder of defendants and provides as follows:

[*P53]  "(B) Joinder of defendants. Two or more defendants may be charged in the same indictment, information or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct. Such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count."

[*P54]  Similarly, R.C. 2945.13 provides that, when two or more defendants have been jointly indicted for a felony, the defendants should be jointly tried unless, on application of one of the defendants, the court orders that they be tried separately.

[*P55]  Crim.R. 14 permits the trial court to grant a severance of trials when it appears that a joint trial would prejudice either the state or a defendant.

[*P56]  An appellate court reviews a trial court's decision on joinder for abuse of discretion. *State v. Scott*, Mahoning App. No. 05-MA-215, 2007 Ohio 6258. If a defendant claims the court erred in refusing to allow separate trials of multiple charges, he has the burden of affirmatively showing that his rights were prejudiced.  *State v. Torres* (1981), 66 Ohio St.2d 340, 343, 421 N.E.2d 1288. "When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." *State v. Schaim*, 65 Ohio St.3d 51, 59, 1992 Ohio 31, 600 N.E.2d 661.

[*P57]  In this matter, the record indicates that defendant filed the motion for a separate trial after the jury had already been impaneled and the state had begun the presentation of its evidence. The motion was not timely pursuant to Crim.R. 12(D).  *State v. Palmer*, Jefferson App. No. 04-JE-41, 2006 Ohio 749. In addition, since the state maintained that all three original defendants acted in concert, and aided and abetted one another, the evidence of Briscoe's conduct would be admissible even if the counts were severed, and the evidence of each crime was simple and distinct.  We find no abuse of discretion.

***

[*P81]  This court reviews a claim of ineffective assistance of counsel under the two-part test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed. 2d 674.  Under *Strickland*, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance.  *State v. Bradley*

-26-

(1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph one of the syllabus.  To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different. Id. at paragraph two of the syllabus.  Judicial scrutiny of a lawyer's performance must be highly deferential.  *State v. Sallie*, 81 Ohio St.3d 673, 674, 1998 Ohio 343, 693 N.E.2d 267.  "Failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel, nor could such a failure be prejudicial." *State v. Henderson*, Cuyahoga App. No. 88185, 2007 Ohio 2372.

[*P82]  In this assigned error, defendant claims that his trial counsel rendered ineffective assistance when he failed to do the following: 1) failing to properly seek separate trials; ***

[*P83]  In so far as we have determined that the evidence of Briscoe's conduct would be admissible even if the counts were severed, the evidence of each crime was simple and distinct and the matters were properly tried together, we find no error as to severance. Absent an error, the claim of ineffective assistance must fail. *State v. Henderson*, (1988), 39 Ohio St.3d 24, 33, 528 N.E.2d 1237.

*Segines*, 2008-Ohio-2041 at ¶¶81-85.

The state appellate court identified the correct governing standard concerning claims of ineffective assistance of counsel.  Furthermore, the state court's finding that counsel satisfied the *Strickland* standard is not unreasonable.  "[T]he appropriate standard asks whether a joint trial poses a serious risk to a specific trial right of the defendant."  *See, e.g., Lang v. Gundy*, 399 Fed. Appx. 969, 976 (6th Cir. 2010) (*citing Zafiro v. United States*, 506 U.S. 534 (1993)).  The *Lang* court explained that "[s]trong public policy favors joint trials when charges will be proved by the same evidence and result from the same acts, because society has an interest in speedy and efficient trials," and that "the risk of prejudice to defendants in a joint trial is presumably low, because juries are presumed capable of sorting evidence and considering separately each count and each defendant.") (*citing United States v. Caver*, 470 F.3d 220, 238 (6th Cir. 2006); *United States v. Welch*, 97 F.3d 142, 147 (6th Cir. 1996) (internal quotation marks omitted)).

Even a mutually antagonistic defense is not considered *per se* prejudicial and, therefore,

does not mandate severance as a matter of law. *Id.* (*citing United States v. Breinig*, 70 F.3d 850, 853 (6th Cir. 1995)).  Finally, the prejudice that Segines must demonstrate from the joinder "in order to justify a grant of a writ of habeas corpus is actual prejudice, not merely the potential for prejudice." *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. Ohio 2007).  As Segines fails to identify any specific right infringed by the joint trial or any actual prejudice, his argument that a joinder prevented him from obtaining a fair trial is without merit; and, consequently, so is his argument that counsel was ineffective for failing to make a timely request for severance.

### V.  Conclusion

For the foregoing reasons, it is recommended that Segines's Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE

Date: September 13, 2012

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

-28-